# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 28, 2011

No. 10-30719
Summary Calendar

Lyle W. Cayce
Clerk

MARIA N. PICARD,

Plaintiff–Appellant,

v.

ST. TAMMANY PARISH HOSPITAL,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-CV-824

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Maria Picard filed suit against her former employer, St. Tammany Parish Hospital, pursuant to the Americans with Disabilities Act. The jury returned a verdict in favor of St. Tammany. Picard appeals, asserting error in the district court's instructions to the jury and asserting that the verdict lacks evidentiary support. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30719

# I

Picard worked as a transcriptionist at St. Tammany until November 2006. As a transcriptionist, Picard's duties included transcription in addition to tasks such as assisting her co-workers and answering the phone. During her last five years at St. Tammany, Picard was subject to annual performance reviews. Each of these performance reviews rated her as competent or better. She also received a merit pay-raise after each review.

Picard has been diagnosed with Charcot-Marie-Tooth disease (CMT). Her physician describes it as a condition that delays nerve impulse propagation. As a result, Picard requested that she be permitted to use a dictation software program, Dragon, which would allow her to limit her typing by speaking the dictation. She also requested a quiet room in which to work. She testified at trial that she had difficulty working, walking, shopping, and engaging in activities requiring fine motor skills. She also stated that her friend took her shopping and that increased concentration ameliorated her risk of tripping.

To demonstrate her CMT's medical relevance to St. Tammany, Picard referenced her medical correspondence. In 2000, her doctor at the time, Dr. Palopoli, wrote a letter to the hospital describing Picard's CMT, as well as her carpal tunnel syndrome and fibromyalgia. Dr. Palopoli also stated that, in light of these conditions, he "would recommend from a medical standpoint" that Picard receive a break every hour to stretch. St. Tammany's policies already allowed its transcriptionists to take breaks to stretch. Subsequently, in 2004, Picard took a medical leave and had surgery to improve her carpal tunnel syndrome. Her surgeon, Dr. Plauche, released her to work with no restrictions on work, bending, walking or standing, sitting, lifting, carrying, pushing or pulling, positioning, or repetitive actions.

Approximately six months after the carpal tunnel surgery, and roughly five years after the Palopoli letter, another of Picard's doctors, Dr. Fischer, wrote

No. 10-30719

a letter to St. Tammany.  This letter stated that as a result of CMT, Picard's ability to perform her transcriptionist duties was "impaired."  Dr. Fischer wrote that it was his "opinion" that this constituted a "significant handicap" for Picard, and that it "should be taken into account in any measures of her job performance."  Some eleven months later, Dr. Plauche wrote a letter stating that Picard was "interested in obtaining the Dragon program for work."  Dr. Plauche believed Dragon would be "beneficial" for her and would allow her to devote her time to meeting her output requirements.  St. Tammany did not provide Picard with the Dragon software.  It did permit her to use ExSpeak, which creates a rough draft of a physician's dictation.  A transcriptionist then edits that draft.  After trying it, Picard told St. Tammany that she could not use ExSpeak, finding it difficult and painful.   Picard resigned from St. Tammany in November 2006.  At that time she thanked her supervisors and offered to "work per diem" for the hospital in the future.  She then began working as a clerk at another hospital.

Picard subsequently filed suit against St. Tammany.  Picard alleged that she was disabled and that St. Tammany had violated the Americans with Disabilities Act (ADA).[1]  At the conclusion of the trial, the jury found that Picard was not a qualified individual with a disability under the ADA.  Picard appeals the jury instructions and the sufficiency of the evidence supporting the jury's verdict.  Our jurisdiction over this appeal is properly vested pursuant to 28 U.S.C. § 1291.

## II

Picard appeals the instruction given to the jury, contending that the jury should have been instructed that "a per se violation of the ADA occurs when the employer fails to engage in the required 'interactive process,' once an employee requests an accommodation."  We review a district court's refusal to provide a

---

[1] 42 U.S.C. § 12102 *et seq.*

3

requested jury instruction for abuse of discretion.[2]  Given this "substantial latitude," refusal to give such a jury instruction "constitutes reversible error 'only if the instruction 1) was a substantially correct statement of law, 2) was not substantially covered in the charge as a whole, and 3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the party's ability to present a given claim.'"[3]

The ADA protects qualified individuals with disabilities from discrimination.[4]  A "qualified individual with a disability" is "'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'"[5]  A "disability," in turn, is: "'(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'"[6]  Stressing the need for an individual to be substantially limited, we have held that "[m]erely having an impairment, however, does not make one disabled for purposes of the ADA."[7]  That said, an employer's failure to make "'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability'" constitutes discrimination, unless the accommodation would impose an "'undue hardship'" on the business.[8]

---

[2] *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 578 (5th Cir. 2004).

[3] *Id.* (quoting *United States v. McClatchy*, 249 F.3d 348, 356 (5th Cir. 2001) (internal brackets omitted)).

[4] *E.E.O.C. v. Chevron Phillips Chem. Co.*, *L.P.*, 570 F.3d 606, 613-14 (5th Cir. 2009).

[5] *Id.* at 614 (quoting 42 U.S.C. § 12111(8)).

[6] *Id.* (quoting 42 U.S.C. § 12102(2)).

[7] *Id.*

[8] *Id.* at 613-14 (quoting 42 U.S.C. § 12112(b)(5)(a)).

No. 10-30719

When a qualifying individual with a disability makes a request for an accommodation, the ADA calls for an "interactive process" between employer and employee: "'a meaningful dialogue with the employee to find the best means of accommodating that disability.'"[9]

Picard requested that the district court instruct the jury that a failure to engage in the interactive process, once an accommodation is requested, constitutes a "per se" violation of the ADA.  We have previously described a "per se rule" as providing "an immutable principle" that specific conduct violates the law.[10]  This is echoed by BLACK'S LAW DICTIONARY, which provides the definitions "[o]f, in, or by itself; standing alone, without reference to additional facts" and "[a]s a matter of law."[11]

Given these definitions, Picard's proposed per se jury instruction lacks support from our prior holdings regarding the ADA and its interactive process.  We have observed that the "ADA's regulations state that 'it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation' in order to craft a reasonable accommodation."[12]  Of course, that which "may be" necessary is not universally required.  In fact, Picard's proposed per se rule is ill-suited to consideration of the interactive process.  We have stated that "there may be some situations in which the reasonable accommodation is so obvious that a solution may be developed without either party consciously participating in an

---

[9] *Id.* at 621 (quoting *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 108 (1st Cir. 2005)).

[10] *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976).

[11] BLACK'S LAW DICTIONARY 1178 (8th ed. 1999).

[12] *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735 (5th Cir. 1999) (quoting 29 C.F.R. § 1630.2(o)(3)).

interactive process."[13]  This is so because the "interactive process is not an end i[n] itself—it is a means to the end of forging reasonable accommodations."[14] "The process must thus be viewed on a case-by-case basis."[15]

Picard relies upon our statement regarding the interactive process in *E.E.O.C. v. Chevron Phillips Chemical Co., L.P.*  There, we stated that if an employee satisfies her burden "to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations," as a result of "such a request" "the employer is obligated by law to engage in an 'interactive process.'"[16]  Yet contrary to Picard's contention, *Chevron* refers only to those individuals who specifically identify their disability and the resulting limitations.  Moreover, *Chevron* indicates that not all impairments constitute disabilities under the ADA.[17]  By contrast, Picard's desired instruction would not require a jury to consider whether an employee had a disability under the ADA, an impairment, or neither before imposing liability on employers that fail to enter the interactive process.  Thus, Picard's argument is unavailing.

Further, insofar as Picard contends that requesting an accommodation is a protected activity, regardless of whether she was ultimately disabled, she has failed to cite to retaliatory measures taken in response to her request for an accommodation.  Such a failure to provide "the reasons [s]he deserves the requested relief" constitutes abandonment of an issue.[18]

---

[13] *Id.* at 736.

[14] *Id.*

[15] *Id.*

[16]  570 F.3d 606, 621 (5th Cir. 2009).

[17] *Id.* at 614.

[18] *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

No. 10-30719

**III**

Picard also contends that the jury's verdict lacks sufficient evidentiary support. The jury found that Picard was not a "qualified individual with a disability under the ADA." In reviewing the evidentiary support for a jury verdict, "[u]nless the evidence is of such quality and weight that reasonable and impartial jurors could not arrive at such a verdict, the findings of the jury must be upheld."[19] Our inquiry examines the time of the adverse employment action, not the present.[20]

As noted above, an ADA disability is: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[21] For the jury to determine that Picard was disabled, proof of an impairment is insufficient—for instance, Dr. Fischer's statement that Picard's ability to perform her transcription duties was "impaired." Instead, an impairment must substantially limit a major life activity, and we have noted that the "ADA's implementing regulations provide a non-exhaustive list of major life activities, including 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'"[22] In evaluating whether a limitation is "substantial," "the EEOC advises that courts should consider: '([i]) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term

---

[19] *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 459 (5th Cir. 1995) (citing *Chem. Distribs., Inc. v. Exxon Corp.*, 1 F.3d 1478, 1483 (5th Cir. 1993)).

[20] *Chevron Phillips Chem. Co., L.P.*, 570 F.3d at 618.

[21] *Id.* at 614 (quoting 42 U.S.C. § 12102(2)).

[22] *Id.* (quoting 29 C.F.R. § 1630.2(i)).

No. 10-30719

impact, or the expected permanent or long term impact of or resulting from the impairment.'"[23]

On appeal, Picard contends that she is disabled within the meaning of the ADA because of her difficulties working, walking, shopping, and with her fine motor skills.  Here, we need not address whether these all constitute "major life activities," since a reasonable jury could have concluded that none of Picard's limitations were substantial.  Regarding working, the jury heard evidence of Picard's positive performance reviews and her merit raises.  She also offered to continue to work at the hospital in her resignation letter.  With respect to walking, Picard testified that "pa[ying] attention when I walked" was sufficient to ameliorate her walking problems.  Picard testified that she had difficulty shopping at the time of the trial, but that her friend would take her shopping at the time she was requesting an accommodation.  She also testified that her lack of fine motor skills led her to drop items.  Yet, Picard testified that she was able to perform her subsequent job—including pulling apart charts and filing the components accordingly—"[f]airly well."  Moreover, the jury heard her testimony regarding her typing proficiency.  As a result, reasonable and impartial jurors could have concluded that Picard was not a qualified individual with a disability within the meaning of the ADA.

*        *        *

We AFFIRM.

---

[23] *Id.* at 614-15 (quoting 29 C.F.R. § 1630.2(j)).