Mary Alice SILVA, Plaintiff–Appellant

v.

CITY OF HIDALGO, TEXAS; Hidalgo Police Department, Defendant–Appellee.

No. 13–41064
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 17, 2014.

---

Adam Poncio, Poncio Law Offices, P.C., San Antonio, TX, Christopher Edwin McJunkin, Law Office of Chris McJunkin, Corpus Christi, TX, for Plaintiff–Appellant.

J. Arnold Aguilar, Esq., Aguilar & Labarte, L.L.C., Brownsville, TX, for Defendant–Appellee.

Before JOLLY, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM: *

Appellant Mary Alice Silva ("Silva") appeals the district court's grant of summary judgment to the City of Hidalgo (or "City") on her claims under the Family Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), and Title VII of the Civil Rights Act of 1964.[1] For the reasons that follow, we AFFIRM the district court's grant of summary judgment.

## STATEMENT OF FACTS

Silva joined the City's Police Department as a member of the Special Weapons and Tactics Team ("SWAT") in December

---

1. Silva's Complaint also asserted claims for gender discrimination and retaliation under the Texas Labor Code. Although Silva purports to appeal the denial of her state claims, she has not briefed the issues and thus has waived those arguments. See FED. R.APP. P. 28(a)(8)(A); United States v. Whitfield, 590 F.3d 325, 346 (5th Cir.2009). In any case, because the law governing claims under the Texas Labor Code and Title VII is identical, Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 403 n. 2 (5th Cir.1999), Silva's claims under the cognate state provisions to Title VII fail for the reasons discussed infra.

of 2005. On June 28, 2011, Silva broke her leg while jogging and underwent surgery the next day. Because she was unable to return to her position following the surgery, Silva took FMLA leave, which was set to expire on September 21, 2011. At some time prior to this date, Silva requested to be placed on light duty or desk duty when she returned to the force. Her request was denied and she was told that if she did not return to work in her former capacity when her leave expired she would be deemed to have resigned. On September 21st Silva sent an email to Hidalgo Police Chief Vernon Rosser ("Rosser") renewing her appeal for light or desk duty or, in the alternative, requesting "FMLA leave and any other available medical or other available leave" because she did "not expect to be able to return to work for at leat [sic] another month." Two days later, Silva visited her doctor for an evaluation and medical treatment. The assessment letter, which was faxed to Rosser, contained the prognosis that Silva would require "at least [ ] one to two more months of physical therapy" and advised that she would "not be able to participate on full duty as a peace officer especially when she is involved in a swat team." The letter also stated that her doctor was "willing to sign for her to continue to be off work for at least another three months if necessary."

Rosser responded to Silva's email by letter on September 28, 2011. The letter stated that there were no available positions that met Silva's physical limitations and informed Silva that she had been terminated for failure to return to work. Silva brought this lawsuit alleging that the City failed to offer her a reasonable accommodation in violation of the ADA, and retaliated against her for taking FMLA leave and reporting sexual harassment. The district court granted summary judgment for the City on all claims.

## STANDARD OF REVIEW

"We review a grant of summary judgment de novo, applying the same standard as the district court." *Ion v. Chevron USA, Inc.,* 731 F.3d 379, 389 (5th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(A). "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hosps. of Dallas, Inc.,* 478 F.3d 255, 260 (5th Cir.2007). A court weighing a motion for summary judgment must interpret all facts and draw all reasonable inferences in favor of the nonmovant. *Ion,* 731 F.3d at 389.

## DISCUSSION

### I. ADA

Silva focuses her brief primarily on her ADA claim. She contends that the City failed to engage in the requisite interactive process to reasonably accommodate her and that her requests for such an accommodation were unlawfully denied.

Title I of the ADA prohibits an employer from discriminating against a qualified individual on the basis of her disability. 42 U.S.C. § 12112(a). A " 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). A reasonable accommodation may require reassignment to a vacant position. *Id.* § 12111(9).

Discrimination under the statute includes the failure to make reasonable ac-

commodations to the known physical or mental limitations of an otherwise qualified employee with a disability, unless accommodation would impose an undue hardship on the employer. *Id.* § 12112(b)(5)(A). Once an employee has made a request for an accommodation, " 'it may be necessary for the employer to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation' in order to craft a reasonable accommodation." *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735 (5th Cir. 1999) (quoting 29 C.F.R. § 1630.2(*o*)(3)) (alteration omitted).

■ Silva claims that the City violated the ADA by failing to engage her in an interactive process to find a reasonable accommodation for her disability, such as a desk duty or light duty position or an unpaid leave of absence.[2] By Rosser's own admission, the City's practice was to allow an employee to take FMLA leave and then terminate her if she was unable to return to her former position when her leave expired. While this unbudging framework may in another circumstance violate the City's duty to participate in an interactive process, it did not do so in this case.

Silva in fact initiated a discussion about reasonable accommodations by requesting (more than once) to be placed on light duty or desk duty. Rosser testified in his deposition that there were no such positions available and Silva has not provided any evidence to the contrary. "For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997). "The plaintiff bears the burden of proving that an available position exists that [s]he was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir.2007).

On the day her FMLA leave expired, Silva requested permission to take unpaid leave because she would not be able to return to work for *at least* one month. The doctor's assessment submitted to Rosser in conjunction with her request stated that she required "extensive physical therapy" for "*at least* one to two more months" to rebuild her muscle strength and offered "to sign for her to continue to be off work for *at least* another three months." Silva could not (or simply did not) provide an estimate of when she could resume her former job duties except to say that it would be longer than one month in the most optimistic scenario. "Reasonable accommodation does not require an employer to wait indefinitely for the employee's medical conditions to be corrected." *Rog-*

---

2. An injury qualifies as a disability under the ADA if it "substantially limits one or more major life activities," such as walking, standing, or working. 42 U.S.C. § 12102(1)(A) and (2)(A). Prior to the ADA Amendments Act of 2008, Pub.L. No. 110–325, 122 Stat. 3553, it was clear that "temporary, non-chronic impairments of short duration, with little or no long term impact" such as "broken limbs," were not considered disabilities under the ADA. 29 C.F.R. pt. 1630 app., § 1630.2(j) (1998); *see also Evans v. City of Dallas*, 861 F.2d 846, 852–53 (5th Cir.1988) (same). Current EEOC regulations implementing the Amendments Act provide that "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting," thus qualifying as a disability under the Act. *Id.* § 1630.2(j)(1)(ix) (2013). But "the duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity." *Id.* pt. 1630 app., § 1630.2(j)(1)(ix) (2013) (internal quotations and citation omitted). Because Silva's claim fails even if her broken leg constitutes a disability under the ADA, we do not address the question of whether temporary impairments now merit protection under the Act.

ers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 760 (5th Cir.1996) (quoting Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995)) (alterations omitted); see also Reed v. Petroleum Helicopters, Inc., 218 F.3d 477, 481 (5th Cir.2000) (same).

"[T]he regulation's direction to the parties to engage in an interactive process is not an end in itself—it is a means to the end of forging reasonable accommodations." Loulseged, 178 F.3d at 736. "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." Id. at 736 (emphasis added). Silva's claims that the City was under an obligation to keep her position open for an unspecified amount of time until she was able to return (which turned out to be at least five months after her FMLA leave expired) or create an entirely new position for her simply cannot be squared with the statute's entitlement to a "reasonable" accommodation. Accordingly, even if a genuine issue of material fact exists as to whether the City participated in the interactive process in good faith, its dereliction cannot be said to have led to a failure to reasonably accommodate Silva because there is no evidence that a reasonable accommodation was feasible.[3] For this reason, Silva has not put forth evidence sufficient to prevail on her ADA claim.

## II. FMLA

Silva next argues that Rosser and the City fired her in retaliation for taking FMLA leave. The FMLA provides eligible employees with twelve workweeks of leave during a twelve-month period upon a triggering event, including "a serious health condition that makes the employee unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). The Act contains two distinct provisions. The first creates substantive rights, such as the right of the employee to be restored to the same or equivalent position she held when her leave commenced. Mauder v. Metro. Transit Auth. of Harris Cnty., Tex., 446 F.3d 574, 580 (5th Cir.2006). The second provision protects employees from retaliation for exercising these rights. Id.

### A.

Insofar as Silva is alleging that the City interfered with her substantive rights under the FMLA by refusing to allow her to return to the police force on light duty or desk duty, her broad reading of the statute is mistaken. "An employee is not entitled to 'any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.'" Shirley v. Precision Castparts Corp., 726 F.3d 675, 681 (5th Cir.2013) (quoting 29 U.S.C. § 2614(a)(3)(B)); see also 29 C.F.R.

---

3. In E.E.O.C. v. Chevron Phillips Chem. Co., LP, 570 F.3d 606, 621 (5th Cir.2009), a panel of this Court stated that "[w]hen an employer does not engage in a good faith interactive process, that employer violates the ADA—including when the employer discharges the employee instead of considering the requested accommodations." This summary statement was not intended to eradicate Loulseged's causation requirement or relieve a plaintiff of her burden of showing that a vacant position existed which she was qualified to perform. See Picard v. St. Tammany Parish Hosp., 423 Fed.

Appx. 467, 470 (5th Cir.2011) (failure of employer to engage in the interactive process is not a per se violation of the ADA). In Chevron, the panel found that the plaintiff had made a sufficient showing to create a material issue of fact as to whether a reasonable accommodation existed but was ignored by the employer. Chevron, 570 F.3d at 620–22. Here, Silva has not adduced any evidence that there was an existing vacant desk duty or light duty position, or that Rosser's assessment that no such position was available was flawed.

# 425

§ 825.216(c) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition ..., the employee has no right to restoration to another position under the FMLA."). Silva does not claim that before her injury she possessed the right to transfer from SWAT to light duty. The City held open for Silva her former position until she exhausted her leave. "If an employee fails to return to work on or before the date that FMLA leave expires, the right to reinstatement also expires." *Hunt v. Rapides Healthcare Sys., LLC,* 277 F.3d 757, 763 (5th Cir.2001). The City was under no obligation to restore her to her position when she was ready to return five months later.

## B.

■ Silva further asserts that she was fired in retaliation for taking FMLA leave.[4] But this claim is largely indistinguishable from her interference claim. Assuming that Silva can make out a *prima facie* case, she does not provide any evidence of pretext. The City's position is that it did not terminate Silva for taking FMLA leave, but because she was physically unable to perform the essential functions of her position when her leave expired. Silva acknowledges that she could not have performed her job duties for at

least several months after she was due to return. As discussed above, she had no right to be placed in a new, non-equivalent position. 29 U.S.C. § 2614(a)(3)(B). Although Silva asserts that at some point in the past three individuals were granted desk duty accommodations, she has not identified any such positions that were open at the time her FMLA leave expired. Silva's own argument—and the City's admission—that it was the City's policy to terminate employees who could not return to their job upon exhausting FMLA leave undercuts her claim that it acted with retaliatory animus towards *her*. Because Silva has failed to raise a genuine issue of material fact that her termination was, even in part, the result of retaliation for taking FMLA leave, the district court properly granted summary judgment to the City on her FMLA claim.

## III. Title VII

Finally, Silva appeals the district court's grant of summary judgment on her hostile work environment and retaliation claims under Title VII, 42 U.S.C. § 2000e *et seq.*[5] "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive working environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Title VII also contains an antiretaliation provi-

---

4. This Court applies the *McDonnell Douglas* framework to retaliation claims under the FMLA. *Id.* at 768. The City contends that the Supreme Court's holding in *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* —— U.S. ——, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013), that successful Title VII plaintiffs must prove that the unlawful retaliation would not have occurred but-for the wrongful action of the employer, should be extended to FMLA retaliation claims. We need not decide that question here as Silva does not argue that a mixed-motive framework applies to her claim, and, in any case, she fails to create a material issue

of fact under even the most lenient standard. *See Ion,* 731 F.3d at 389–90 (5th Cir.2013) (declining to decide whether *Nassar* applies to FMLA retaliation claims when outcome is the same under either standard).

5. Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1).

sion that "prohibits an employer from discriminating against an employee or job applicant because that individual opposed any practice made unlawful by Title VII." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal quotations, citation, and alterations omitted).

### A.

■ Silva first alleges that Rosser made sexual remarks to and about her that created a hostile work environment. "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'"[6] *Shepherd v. Comptroller of Pub. Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir.1999) (quoting *Meritor*, 477 U.S. at 67, 106 S.Ct. 2399) (alterations and internal quotations omitted). Silva's allegations, *in toto*, amount to a few scattered comments by Rosser that may be interpreted as being of a sexual nature.[7] Simple teasing, offhand comments, and isolated incidents, however, do not amount to pervasive harassment capable of changing the terms and conditions of employment. *Id.* "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Id.* (internal quotation marks and citation omitted). Rosser's remarks simply do not approach the level of "extreme conduct

that would prevent [Silva] from succeeding in the workplace." *Id.*

### B.

■ Silva also claims that she complained about Rosser's conduct and that her firing was, in part, retaliation for this act. "To carry her ultimate Title VII burden, an employee must show that her employer would not have taken the adverse employment action 'but for' the employee's participation in the protected activity." *Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir.1999); *see also Nassar*, 133 S.Ct. at 2533 (Title VII plaintiff must prove that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."). Silva's own allegation is fatal to her claim because she asserts only that "she was terminated *in part* because she rejected the sexual advances of [Rosser] and because she made [ ] reports to Captain Vela." Notwithstanding this deficiency, Silva's only evidentiary support for her retaliation claim is that she reported Rosser's behavior to Captain Vela, who worked under Rosser (Vela denies any report was ever made). Vela, however, was not involved in the decision to terminate Silva and Silva provides no evidence that Rosser or any other member of the police force responsible for terminating her employment had any knowledge of her complaint. Moreover, as discussed above,

---

**6.** Where an employee's allegation is against a supervisor, as here, the employee must prove four elements to prevail on a hostile working environment claim: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a 'term, condition, or privilege' of employment." *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 162–63 (5th Cir.2007).

**7.** Silva alleges that Rosser pointed to a picture of her and then pointed to her and said "what a difference from then till now"; told her on one occasion that her pants were a little tight and that she looked good and held his hands in front of his chest as though he were holding something up; and made comments such as "mmm" when she leaned over his desk.

there is no evidence that the termination decision was the result of anything other than the City's policy of letting go of employees who were not able to perform their duties upon returning from FMLA leave and the absence of an open position to accommodate Silva. The district court correctly granted summary judgment on Silva's Title VII claim.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.