# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30344
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 6, 2017

Lyle W. Cayce
Clerk

KARL B. MOLDEN,

> Plaintiff–Appellant,

v.

EAST BATON ROUGE PARISH SCHOOL BOARD,

> Defendant–Appellee.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:14-CV-351

Before REAVLEY, PRADO, and GRAVES, Circuit Judges.

PER CURIAM:*

Plaintiff–Appellant Karl Molden sued his employer, Defendant–Appellee East Baton Rouge Parish School Board ("School Board"), in the United States District Court for the Middle District of Louisiana for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. The district court granted summary judgment in favor of the School Board. For the reasons

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30344

given below, we AFFIRM the district court's grant of the School Board's summary judgment motion against Molden's claims.

## I. BACKGROUND

Karl Molden was employed by the School Board as a school counselor in September 2006. In 2010, Molden was assigned to Winbourne Elementary School for the 2010–2011 school year. His duties included what can be described as before and after school duty (helping students arriving to campus on the bus or walking), and lunch duty. Winbourne also required staff to assist students during "reading blocks." These were all tasks that Molden alleges required prolonged periods of standing.

Millie Williams, the Director of Human Resources for the School Board, alleged that Plaintiff began to incur frequent absences during November 2010, though Molden denies this allegation. On December 2, 2010, Molden submitted a doctor's note, indicating he needed to be excused from work for two days. On December 7, 2010, Molden submitted a second doctor's note, indicating he needed to be excused from work from December 10 to December 13, 2010, and that he could not engage in prolonged standing, to be reevaluated in one week from that date. Molden then submitted a third note on December 22, 2010, which indicated that he was under medical observation and had been advised not to "engage[] in prolonged standing for an indefinite period of time." None of these notes explained the nature of Molden's medical situation. The school closed for the holidays from December 22, 2010, through January 5, 2011.

Around January 19, 2011, the School Board requested further medical information. Molden contends that this request was coupled with a comment by Millie Williams and Kathryn Brown that if his doctor restricted him from prolonged standing, "he would be writing [you] out of a job." On January 26, 2011, Molden provided the School Board with a note that explained that Molden was being treated for chronic sinusitis and malignant hypertension

2

and that he was advised not to engage in prolonged standing. Molden maintains he was still required to perform bus/walker duty and lunch duty throughout early February 2011. The School Board denies this, arguing that Principal Brenda Wilkinson requested Molden to cease performing his duty tasks upon receipt of the medical note from December 7, 2010. The School Board contends Molden was absent during most of January and February 2011. Molden ultimately requested, and was granted, sick leave for the remainder of the school year. On April 7, 2011, Molden alleges he filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination against the School Board.[1]

In May 9, 2011, Molden was placed on a displaced workers list for the next school year. This allowed the School Board to transfer Molden to a new assignment in the school district. Molden was told, along with others on this list, that "they could review the school vacancy list and directly inform school leaders of any interest in available positions." Effective July 25, 2011, Molden was reassigned to the Montgomery Center as a social worker, where he received a ten-month contract and a salary increase. He reported his standing restrictions, and the record does not indicate that Molden was required to engage in prolonged standing during this placement at Montgomery Center. Molden received satisfactory evaluations and reviews in his new position during the 2011–2012 school year.

The next school year, 2012–2013, Molden's performance began to decline. In early November 2012, a parent filed a complaint, alleging Molden had engaged in "unprofessional behavior during home visit." More specifically, the parent alleged, inter alia, that Molden had come to her house and talked about

---

[1] This specific filing date is not provided in Plaintiff's affidavit or the record, but is mentioned only in Plaintiff's brief. Additionally, the briefs use EEOC and the Louisiana Commission on Human Rights ("LCHR") interchangeably.

her daughter, as well as his personal problems, making her feel "uncomfortable" and "fearful." On November 5, 2012, Molden was placed on leave with pay pending an investigation of the allegations. The Department of Exceptional Student Services and the Office of Risk Management conducted two separate investigations, both revealing that Molden had "failed to provide services to students with disabilities, that he had engaged in unethical conversations with a parent, that he had failed to follow Department and District Procedures, and that he had submitted fraudulent documents." This ultimately led the School Board to terminate Molden on December 10, 2012. Molden contends these allegations were false and that the investigation was one-sided. He also contends that the School Board's conduct, including the termination, was attributable to Plaintiff's filing a charge of discrimination with the EEOC in 2011.

On April 9, 2013, an Administrative Law Judge from the Louisiana Workforce Commission ("LWC") determined that Molden would not be disqualified from his benefits. On February 3, 2014, the Louisiana Commission on Human Rights ("LCHR") found, based on Molden's contentions, that there may have been reason to believe that an ADA violation had occurred and invited the parties to join with the Commission to resolve the matter.

On June 4, 2014, Molden filed a complaint with the district court, alleging that he was (1) denied a request for reasonable accommodation, and that the School Board failed to engage in an interactive process, (2) subjected to work place discrimination, and (3) retaliated against in violation of the ADA. The School Board file a motion for summary judgment, which the district court granted. Molden timely appealed.

## II. DISCUSSION

"This Court 'reviews a district court's grant of summary judgment de novo, applying the same standards as the district court.'" *Caldwell v. KHOU-*

*TV*, 850 F.3d 237, 241 (5th Cir. 2017) (citing *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011)). Summary judgment is appropriate where the movant shows there is "no genuine dispute as to any material fact" and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In reviewing a motion for summary judgment, this Court draws all inferences in a light most favorable to the nonmoving party. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). In the employment discrimination arena, the "salutary function of summary judgment" is that it "allows patently meritless cases to be nipped in the bud." *Caldwell*, 850 F.3d at 241 (quoting *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 814 (5th Cir. 1991)).

On appeal, Molden takes issue with the district court's standard in reviewing the record evidence. Molden also contends that the district court erred in granting summary judgment on his ADA claims, including that he was denied reasonable disability accommodation, subject to a hostile work environment, and wrongfully terminated.

## A.    The District Court's Weighing of Evidence

As an initial matter, Molden contends that in ruling on the School Board's summary judgment motion, the district court improperly weighed Molden's credibility and the evidence in favor of the Defendant. Such action by the district court, Molden argues, is inappropriate under *Tolan v. Cotton*, 134 S. Ct. 1861 (2014).

In *Tolan*, the Supreme Court reemphasized that in ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 1863 (quoting

No. 17-30344

*Anderson*, 477 U.S. at 255). The district court in *Tolan* reviewed the reasonableness of a police shooting. *Id.* The district court drew factual inferences in favor of the moving party, despite disputed factual issues, including the lighting of the porch, the demeanor of the suspect's mother, whether the suspect had made threats, and the suspect's position during the shooting. *Id.* at 1866–67. Because of this, the Supreme Court held that "the court below credited the evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion." *Id.* at 1867–68.

Molden cites to several places in the district court opinion that he believes supports his argument that the district court improperly weighed the evidence and resolved disputed issues in favor of the School Board. Overall, however, the main issue that Molden appears to have is not with the evidentiary findings of the district court, but rather the tone the court takes.[2] Molden's other disagreements have to do with the fact that the district court "fail[ed] to consider" the LWC and the LCHR determination, despite the fact that the district court is not bound by the determinations of those commissions,

---

[2] We need not get into all of Molden's dissatisfactions with the district court's opinion, but many deal with the phraseology of the district court. For instance, Molden says the district court stated that he was "uninterested" in performing various school duties, which Molden contests because he merely said "he believed the duties were not conducive to his role as a social worker." Molden next contests the district court's phrasing of his experience going to the emergency room and then later following up with his regular physician, Dr. Henry Evans, as seeming as though he was "doctor shopping," although the district court's opinion lacks any such language. Molden also takes issue with the district court's characterization of the "displaced workers list" and the fact that the district court stated Molden received a "salary hike," but did not mention that Molden was required to work as a ten-month employee as opposed to a nine-month employee.

*see* La. Rev. Stat. § 23:1636, and the fact that the district court disregarded some conclusory allegations he made in his affidavit.

Although written in a tone that Molden may not agree with, the district court opinion contains no indication that the court acted like the trial court in *Tolan*. In contrast, the district court here credited Molden's evidence, even if it did so in a tone that Molden did not like. Moreover, the district court was not required to accept any conclusory allegations he made. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 219 (5th Cir. 2015). Further, the district court was not obligated to feel bound by the LCHR letter, which only indicated that there may have been reason to believe a violation occurred. La. Rev. Stat. § 23:1636. Thus, the district court properly weighed the evidence. Moreover, even reading the record entirely in the light Molden urges us to, he has still not demonstrated that a genuine dispute of material fact exists on any of his claims, as discussed below.

## B.    Merits Disputes

### 1. *Reasonable Accommodation Claim*

Molden argues the district court erred in granting summary judgment on his reasonable accommodation claim. The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Claiborne v. Recovery Sch. Dist.*, 690 F. App'x 249, 253–54 (5th Cir. June 7, 2017) (citing 42 U.S.C. § 12112(b)(5)). To establish a disability accommodation claim, a plaintiff must demonstrate that: (1) he is a "'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make

'reasonable accommodations' for such known limitations." *Feist v. La. Dep't. of Justice, Office of the Att'y. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)).

The School Board did not dispute that Molden met the first element, and the district court found that Molden met the second element because it was clear from the record that the School Board knew of his disability. Consequently, the question on appeal is whether the district court erred in finding that under the third element, the School Board provided a reasonable accommodation to Molden.

> The ADA defines a reasonable accommodation as including:
>
> (A) making existing facilities used by employees readily accessible to and useable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

*Feist*, 730 F.3d at 453 (quoting 42 U.S.C. § 12111(9)). The district court found first that Molden requested, and the School Board granted, medical leave, and that this action constituted reasonable accommodation. The district court determined next that the placement of Molden on the displaced workers list to find him a new assignment in the school district "where he was no longer required to engage in prolonged standing," and where he did not "suffer any lapse in salary or benefits" also constituted a reasonable accommodation.

Molden takes issue with this conclusion because he asserts that the School Board had knowledge of his disability as of December 2010 (earlier than the trial court's finding of January 2011). He also alleges that he had to engage in prolonged standing until February 2011 and then request medical leave due

to the School Board's failure to provide reasonable accommodations during that time. Molden also wanted the district court to better credit the findings of the LCHR. Finally, he states that with regards to the displaced workers list and new position: he was "placed on a displaced workers list, lost his seniority, had to reapply as a new hire, and was re-hired as a ten-month employee, causing him to work additional hours."

Molden, however, does not cite any case law supporting his argument. Nor does he cite any authority demonstrating that such action by the School Board would make for an inadequate accommodation. Absent any legal support for his argument, it is difficult to see why Molden's ultimate reassignment to a new position in the school district, which he maintains occurred, was not a reasonable accommodation. *See* 42 U.S.C. § 12111(9) (stating that under the ADA, a reasonable accommodation may include "reassignment to a vacant position").

Alternatively, Molden also pleaded that the third element of his reasonable accommodation could be met because the School Board failed to engage in an "interactive process" to determine the specific accommodation that Molden should have been given. This Court has recognized that "[o]nce an employee has made a request for an accommodation, 'it may be necessary for the employer to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation in order to craft a reasonable accommodation.'" *Silva v. City of Hildalgo, Tex.*, 575 F. App'x 419, 423 (5th Cir. 2014) (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735 (5th Cir. 1999) (internal quotation marks and citation omitted)); *see also* 29 C.F.R. § 1630.2(o)(3). This Court has further held that under the interactive process theory, an employer violates the ADA when the "employer's unwillingness to engage in a good faith interactive process *leads to* a failure to reasonably accommodate an employee." *Silva*, 575 F. App'x at 424 (quoting

*Loulseged*, 178 F.3d at 736) (emphasis in original). The record, however, is clear that the School Board *did* provide Molden with a reasonable accommodation. Thus any putative failure to engage in an interactive process cannot be said to have *led* to a failure to reasonably accommodate. *See id.* Accordingly, the district court did not err in finding summary judgment appropriate on Molden's interactive process claim.

### 2. Hostile Work Environment Claim

Molden argues the district court erred in granting summary judgment on his hostile work environment claim. He bases his claim on the fact that he was forced to stand "both before and after he provided appropriate documentation." To establish a prima facie case of disability-based harassment in this Court, Molden must demonstrate:

> (1) that [he] belongs to a protected group; (2) that [he] was subjected to unwelcome harassment; (3) that the harassment complained of was based on [his] disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Credeur v. La. Through Office of Atty. Gen.*, 860 F.3d 785, 795–96 (5th Cir. 2017) (quoting *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235–36 (5th Cir. 2001)). "Moreover, the disability-based harassment must 'be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.'" *Flowers*, 247 F.3d at 236 (quoting *McConathy v. Dr.Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)).

The district court considered only whether Molden could demonstrate a genuine issue of material fact as to the fourth element; the School Board only challenged that Molden could not show that any discrimination faced was sufficiently pervasive. The district court looked at Molden's arguments that he

was subject to discrimination by having to provide further medical documentation of his disability, was subject to remarks related to loss of employment, and was pressured to continue to engage in prolonged standing. The district court found that these acts would not meet the high bar for proving discrimination that this Court established in *Gowesky v. Singing River Hosp. Sys*, 321 F.3d 503 (5th Cir. 2003), or substantially affect Molden's employment, as defined in *Flowers*, 247 F.3d at 236–37.

In *Gowesky*, we emphasized that "[t]he legal standard for workplace harassment in this circuit is . . . high." 321 F.3d at 509. The employee in that case was an ER physician, who had been exposed to hepatitis C. *Id.* She alleged that her employer's actions in response to her exposure constituted disability-based harassment. *Id.* Her employer imposed requirements that she "(a) present a full medical release from her physicians, (b) take a refresher course in emergency medicine, and (c) submit to weekly blood samples." *Id.* at 510. Her employer also made disparaging comments about his unwillingness to be treated by a dentist infected with hepatitis C or to allow employee to suture his child. *Id.* at 510. We found that the employer's actions were reasonable given the fact that the employee worked at a hospital and could present a risk of infection to patients and employees. *Id.* Moreover, we found that the comments made by the employer were not nearly insensitive enough to constitute disability-based harassment. *Id.*

In *Credeur*, we considered a harassment claim by an employee who had developed serious health problems due to complications from her kidney transplant. 860 F.3d at 788. The employee claimed employer-harassment by: "(1) being ordered to attend the meeting with [the Director of Administrative Services] on March 3, 2014; (2) the requirement that she work at least three to four hours in the office and to not work from home; (3) criticism of her work performance; (4) threats of termination; (5) asking her to 'sign false payroll

No. 17-30344

documents,' and (6) being forced to take leave without pay instead of FMLA." *Id.* at 796. We found that the record did not support finding harassment, and stated that "[c]riticism of an employee's work performance . . . and even threats of termination do not satisfy the standard for a harassment claim." *Id.* We also found it significant that none of the employer's actions were "'physically threatening or humiliating' or even offensive." *Id.* (citing *Flowers*, 247 F.3d at 236).

By contrast, in *Flowers*, we considered a situation where a supervisor discovered that an employee contracted HIV. 247 F.3d at 236–37. The supervisor became very distant after discovering the employee's HIV-positive status. *Id.* The employer ceased going to lunch and socializing with employee, began eavesdropping on her conversations, refused to shake her hand, and lured her into meetings to write her up and place her on probation. *Id.* In one of these meetings, the company president called the employee a "bitch" and said he was "tired of her crap." *Id.* at 237. The employer ultimately terminated the employee. *Id.* We held based on these facts, that a "jury could have properly inferred from the evidence that [the supervisors'] conduct was sufficiently severe or pervasive to create a hostile work environment and unreasonably interfere with [plaintiff's] work performance." *Id.*

Based on this circuit's precedent, the district court was correct to grant summary judgment on Molden's disability-based harassment claim. The conduct Molden described, such as the School Board asking for further medical information and Millie Williams and Kathryn Brown's statement that the physician recommending against prolonged standing would be writing Molden out of a job, does not compare to the level of hostility that the employee in *Flowers* faced. The School Board's actions resemble the actions in *Gowesky*, where we found no hostile work environment, emphasizing that "this Court will not elevate a few harsh words or 'cold shouldering' to the level of actionable

12

offense." 321 F.3d at 509 (quoting *McConathy*, 131 F.3d at 564). And like we stated in *Credeur*, comments made that are not physically threatening or humiliating, even if they relate to termination, do not tend to support a finding of harassment. 860 F.3d at 788. Additionally, like in *Gowesky*, Molden's case similarly involves employer's actions that may have been reasonable given the employee's position: here, standing to work with school children. Overall, Molden "may have perceived [the] conditions [he was subject to] to be onerous" but they "do not establish that the work environment would have been perceived as hostile or abusive by a reasonable employee." *See Credeur*, 860 F.3d at 796 (internal quotation marks and citation omitted). No published authority from this Court establishes that claims similar to Molden's in nature would constitute a hostile work environment. Consequently, summary judgment on Molden's hostile work environment claim was appropriate and the district court did not err in granting it.

### *3. Wrongful Termination Claim*

Finally, Molden contends that the district court erred in granting summary judgment on his wrongful termination claim. Molden argues that the School Board terminated him because he pursued an EEOC claim against them for previous treatment. To establish a prima facie case of retaliation under the ADA, Molden needs to show that "(1) [he] participated in an activity protected under the statute; (2) [his] employer took adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the adverse action." *Feist*, 730 F.3d at 454 (citing *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Id.* (quoting *LeMaire v. La.*, 480 F.3d 383, 388–89 (5th

Cir. 2007)). To demonstrate pretext, the employee must show "that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Id.* (citing *Seaman*, 179 F.3d at 301). "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Id.* (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)).

The School Board contends first that Molden could not meet the third element because "no causal connection exists between Molden's filing of his complaint with the [LCHR] on September 7, 2011 and his termination from the School Board in January of 2013." Second, the School Board argues that "even if a causal connection existed, the School Board proffered a legitimate, nondiscriminatory reason for Molden's termination" and that its reason was not pretextual.

To demonstrate a causal connection, a plaintiff may show close "timing between an employee's protected activity and an adverse action against him." *Feist*, 730 F.3d at 454 (quoting *McCoy v. City of Shreveport*, 492 F3d 551, 562 (5th Cir. 2007). This Court has held that "a five month lapse is not close enough without other evidence of retaliation." *Id.* (citing *Raggs v. Miss Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002). "Such evidence may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures." *Id.* at 454–55 (citing *Shroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1024 (5th Cir. 2011)).

The district court dismissed Molden's retaliation claim because it found that the temporal proximity of fourteen months between Molden filing his EEOC complaint and the School Board terminating him was well beyond the standards set by this Court and, beyond that, the record supported Molden's dismissal. Molden challenges this conclusion because the trial court failed to

consider that the investigation was still ongoing.[3] Even accepting this argument, however, the district court found that the School Board offered non-retaliatory justifications for the dismissal, including the parental complaint, the fact that plaintiff frequently incurred absences, received unsatisfactory reviews, and even forged documents.[4] Most compelling is the parental complaint and the resulting two investigations conducted prior to Molden's termination. Molden challenges this investigation in several conclusory statements in his affidavit, however, he cites no case law that calls into question the veracity of the School Board's explanation. Based on this, the School Board satisfied its burden of showing a legitimate, non-retaliatory reason for terminating Molden. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684–85 (5th Cir. 2001) (finding defendant had satisfied its burden of articulating legitimate, nondiscriminatory reasons for terminating plaintiff where defendant asserted poor work performance by plaintiff and supported assertion with documented evidence in work file).

To survive the summary judgment motion, then, Molden must demonstrate that the School Board's proffered explanation is pretextual. In attempting to do so, Molden claims the findings of the LWC on "the shortcomings of the Defendant's investigation, his reviews, his timesheets, and the records of his whereabouts on the day he allegedly engaged in inappropriate conduct with a parent" should have directed the trial court to find pretext. The district court, however, was not bound by the LWC's findings. La. Rev. Stat. § 23:1636. Further, the record is clear that Molden cannot demonstrate he would not have been terminated but for filing the EEOC

---

[3] Molden, however, attaches and references only the LCHR decision rendered in 2014, not any evidence that demonstrates his earlier filing, besides his statement in his brief.

[4] The Plaintiff contests several of these points, but only as conclusory allegations in an unsupported affidavit, which the district court rightfully disregarded.

charge. The School Board's investigations indicated the Plaintiff had engaged in inappropriate conduct with a parent and failed to follow department procedures. Two investigations led to this determination. The results of these investigations demonstrate non-pretextual reasons for his termination and foreclose the conclusion that Molden would not have been fired but for the EEOC claim.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order granting the School Board's summary judgment motion against Molden's claims.