# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

No. 16-30667

---

United States Court of Appeals
Fifth Circuit

**FILED**
June 7, 2017

Lyle W. Cayce
Clerk

VERA CLAIBORNE,

> Plaintiff - Appellant

v.

RECOVERY SCHOOL DISTRICT,

> Defendant - Appellee

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:14-CV-483

---

Before JONES and OWEN, Circuit Judges, and ENGELHARDT, District Judge. *

KURT D. ENGELHARDT, District Judge:**

Appellant Vera Claiborne (Claiborne) appeals an adverse summary judgment dismissing with prejudice her claims asserted against her former

---

* Chief Judge of the Eastern District of Louisiana sitting by designation.

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30667

employer, Appellee Recovery School District (RSD), under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and Louisiana Revised Statutes 23:301, et seq., and 23:1361(B). For the following reasons, we AFFIRM the district court's judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Claiborne began working for RSD in Baton Rouge, Louisiana, on May 22, 2012. She was assigned to work at Prescott Middle School, which at that time shared a building with Istrouma High School. Prescott utilized 14-16 rooms located on two floors in the rear of the building. The faculty and student restrooms, as well as two of Prescott's 11-12 classrooms, were on the first of the two floors; the remainder of the classrooms, including the computer rooms, the administrative office, and the teacher's lounge, were on the second. The building did not have an elevator.

As a paraprofessional at Prescott, Claiborne worked primarily with special education students with job duties requiring her presence throughout the day on both floors of the school. During classroom instructional time, Claiborne continuously walked around the room to monitor and assist the students with their assignments. She also was tasked with escorting students between the (first and second floor) classrooms,[1] the (first floor) bathrooms, and the cafeteria, which required that she traverse the stairs between the two floors several times during the day.[2] Claiborne additionally monitored the students during their lunch, requiring that she "stand the whole time and walk around" the cafeteria. She also had "bus duty" in the mornings, which

---

[1] Two of those rooms were computer classrooms on the second floor. There was no computer classroom on the first floor of the building. In fact, one of the upstairs computer rooms was converted from a Physical Education classroom when extra computer space was needed.

[2] Unfortunately, the record does not clearly identify the floor on which the Prescott cafeteria was located.

2

necessitated that she first walk upstairs to sign in, review the schedule, and check email, and then walk downstairs to wait until the last bus arrived." Thereafter, she would monitor the halls between and after classes. She stood during all of these tasks.

On November 15, 2012, while escorting two students to the administrative office, Claiborne slipped and fell in the hallway. A day or two later, she saw a doctor,[3] who diagnosed her with a sprained back. After her injury, Claiborne used a cane, and had a difficult time walking up and down the stairs at Prescott."[4] As a result, she began experiencing persistent pain in her back, neck, and legs.

On November 29, 2012, Claiborne met with Prescott Principal Rodney Coats to request an accommodation for her injuries. Specifically, she requested that he modify her responsibilities such that she would no longer have to climb the stairs as frequently throughout the workday. She also asked to be excused from lunch and bus duty. The day after their discussion, the guidance counselor was permitted to take Claiborne's class to and from lunch. Thereafter, however, the guidance counselor was too busy; thus, Claiborne resumed her normal duties.

Again seeking an accommodation in February or March 2013 from Coats, Claiborne submitted a (undated) note from her physical therapist stating, "Ms. Claiborne is able to go up to her classroom at the beginning of the day and remain on the 2nd floor," and asking that she be excused from "ascending and descending stairs consistently during the school day until further notice."[5]

---

[3] Claiborne contends that she began receiving workers' compensation medical benefits in November 2012, but did not begin receiving wage benefits until approximately June 2013, after she had exhausted her sick leave benefits.

[4] Claiborne testified that, in going up the stairs, she had to use her "walking stick," and the railing, and go "real slow." One day, she almost fell.

[5] The note from Ryan Bozant, PT, DPT, states:

According to Claiborne, the therapist also requested that she be allowed to periodically sit in a chair for a while to rest.[6]  In her deposition, Claiborne testified that "right after he got the request . . . [Principal Coats] "did tr[y] – he told me . . . when I leave from bus duty, then don't come right back upstairs[.] [Instead,] go to a classroom and help in that classroom and monitor the special ed[ucation]." Her work, however, was not otherwise modified and she thereafter made no other requests for accommodation.

In early April 2013, while Claiborne was out on sick leave, she received a telephone call from the school secretary, her sister, Brenda Claiborne, who purportedly informed her that she would be fired if she did not report to Prescott the next day to help administer the Louisiana Educational Assessment Program (LEAP) test.  As a result of the phone call, Claiborne returned to work on or around April 10, 2013. She was unable to finish the second day of testing, however, because of pain she attributed to packing and transporting the test documents downstairs, and then standing and walking around the room during the test. Upon hearing of her distress during lunch time on the second day, Principal Coats instructed her to go home. According to Claiborne, he added:  "You need to retire because it's not getting any better. With you working and trying to move around and crying, that's not good."

Claiborne remained on leave from April 11, 2013 through the end of the semester. In mid-June 2013, Claiborne learned that she had been terminated

---

> Please excuse Ms. Vera Claiborne from ascending and descending stairs consistently during the school day until further notices.  Ms. Claiborne is able to go up to her classroom at the beginning of the day and remain on the 2nd floor. Please feel free to contact me at 225-275-3177 with any questions.

[6]     In her deposition, Claiborne suggests that she wanted to sit for 30 minutes without standing. No written evidence of this request, however, appears in the record.

No. 16-30667

when she telephoned RSD's central office to ask a question about her pay statement.  Specifically, Claiborne alleges that RSD's HR employee, Brandy Whitfield, told her that she had been terminated because she was "at risk." From this, and her additional assertion that her position was filled by a non-disabled employee, Ashley White, Claiborne attributes her termination to her disability, her request for accommodation, and her application for worker's compensation benefits.

In December 2013, Claiborne filed an EEOC Charge of Discrimination against RSD. When mediation proved unsuccessful, Claiborne filed a lawsuit in state court, alleging violations of the ADA and Louisiana state law. RSD removed the case to federal court and filed a motion for summary judgment as to each of Claiborne's four claims. In support of its motion, RSD argued that Claiborne was unable to establish a prima facie case for her failure to accommodate claim because no "reasonable accommodation existed at RSD that would have allowed her to perform the essential functions of her job." RSD also argued Claiborne could not succeed on her three termination claims because RSD had a legitimate, nondiscriminatory reason for each claim.

The district court granted summary judgment in RSD's favor on each of Claiborne's claims. This appeal followed.

## DISCUSSION

We review the district court's grant of summary judgment *de novo. Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Summary judgment is proper

No. 16-30667

when "the nonmovant fails to establish facts supporting an essential element of her prima facie claim." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005). We view the evidence in the light most favorable to the nonmovant. *Gray*, 673 F.3d at 354. In our analysis, we neither make credibility determinations nor weigh the evidence. *Id.* Claiborne argues that the district court failed to acknowledge RSD's affirmative duty to attempt to accommodate her disability, leading to a misapplication of Federal Rule of Civil Procedure 56 to the facts of this case. She further contends that the district court improperly weighed evidence in summarily dismissing her failure to accommodate and termination claims.

## I.   *Failure to Accommodate Claim*[7]

Claiborne first argues that RSD failed to reasonably accommodate her disability by not engaging in a meaningful conversation about how to alleviate the pain she continued to suffer during the workday. She claims RSD had, and did not satisfy, an affirmative duty to engage in the "interactive process" to determine how her needs could be accommodated. *See Cutrera*, 429 F.3d at 112. We note, however, that the "interactive process is not an end in itself – it is a means to the end of forging reasonable accommodations." *Silva v. City of Hidalgo, Texas*, 575 Fed. Appx. 419, 424 (2014) (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)). Thus, it is when "an employer's unwillingness to engage in a good faith interactive process *leads to* a failure to

---

[7] Noting that Claiborne requested an accommodation for her disability during the number of months that she remained employed by RSD following her November 2012 injury, the Court considers the viability of her reasonable accommodation claim separately from her three termination claims. *See, e.g., Dillard v. City of Austin, Texas*, 837 F.3d 557, 562 (5th Cir. 2016) ("Apart from any claim that an action was motivated by the employee's disability, an employer's failure to reasonably accommodate a disabled employee may constitute a distinct violation of the [ADA].").

reasonably accommodate an employee [that] the employer violates the ADA."
*Id.* (emphasis added)."

The ADA requires employers to make "reasonable accommodations to
the known physical or mental limitations of an otherwise qualified individual
with a disability who is an applicant or employee, unless such covered entity
can demonstrate that the accommodation would impose an undue hardship on
the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5).
Thus, to recover on a failure to accommodate claim, a plaintiff must prove that:
"(1) [she] is a qualified individual with a disability; (2) the disability and its
consequential limitations were known by the covered employer; and (3) the
employer failed to make reasonable accommodations for such known
limitations."  *Feist v. La., Dept. of Justice, Office of the Attorney General*, 730
F.3d 450, 452 (5th Cir. 2013) (quotation marks omitted).

To satisfy her summary judgment burden as to the first element,
Claiborne must have put forth admissible evidence sufficient to create a
material dispute as to whether she is a "qualified individual with a disability."
*Feist*, 730 F.3d at 452.  The ADA defines "disability" as "a physical or mental
impairment that substantially limits one or more major life activities . . . ."  42
U.S.C. § 12102(1)(A). "Major life activities" include both walking and standing.
*Id.*  Claiborne alleged that she suffers a disability in the form of severe neck,
back, and leg pain resulting from her November 2012 fall at work.  For appeal
purposes, we assume Claiborne had a "disability" as contemplated by the ADA.
Further, given Principal Coats' awareness of Claiborne's injury and difficulties
at work, we assume that the "knowledge" requirement of the second element
also is met.

The next question is whether Claiborne was "qualified" under the ADA.
Proving that status required that she put forth admissible evidence

establishing "(1) that [she] could perform the essential functions of the job in spite of [her] disability *or* (2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996) (emphasis added).

By her own admission, because the building had no elevator, Claiborne could not perform her job responsibilities without "walk[ing] up and down the stairs [between the school's two floors] repeatedly during the work day." Monitoring and assisting the students to whom she was assigned also required that she be able to stand and walk around for extended periods of time. It is clear from the record, however, that Claiborne could not make those repeated trips up and down the stairs, or stand and walk for extended periods of time, after her fall, because of her chronic pain.  Thus, it is evident that Claiborne could not perform the essential functions of her job in spite of her disability, i.e., without any accommodation from her employer.

Accordingly, for purposes of the first element of Claiborne's failure to accommodate claim, the query becomes whether a "reasonable accommodation" existed that would have allowed her to perform the essential functions of her job, such that she was "qualified"; and if so, for purposes of the third element, whether or not RSD made that accommodation.  The district court found Claiborne's failure to accommodate claim lacking because no reasonable accommodation was shown to be available. Specifically, the Court concluded: "RSD would have had to relieve [Claiborne] of her essential job functions and assign her job functions to someone else" to accommodate her requests.

Providing a "reasonable accommodation" under the ADA does not require the employer to "relieve the employee of any essential functions of the

job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties." *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998); *see also Turco*, 101 F.3d at 1094 (accommodation that would result in other employees having to work harder or longer or is not required). Thus, a disabled employee cannot perform her job with reasonable accommodation if the only reasonable accommodation is for the employee not to perform the essential functions of her job. *See Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997).

In this instance, Claiborne contends that RSD could have reasonably accommodated her disability by (1) reducing the number of times she was required to use the stairs each workday, (2) allowing her to exchange work assignments with a colleague, (3) limiting her classroom time to the school's first floor classrooms, (4) providing her with a wheelchair or desk chair with wheels, and/or (5) allowing her to sit, rather than stand, for certain periods of time. For obvious reasons, permitting Claiborne to refrain from traversing the stairs during the day would hinder her ability to escort students to and from the (first and second floor) classrooms and the (first floor) restrooms as needed. And allowing her to swap assignments with her co-worker, Roger Cooper (because he worked with only one special education student, unlike Claiborne, who worked with several), would amount to a reassignment of her responsibilities to another employee. As stated in *Robertson,* such measures are not required by the ADA. Besides, Claiborne makes no evidentiary showing that she could fulfill Cooper's job duties, and vice versa; that undertaking the tasks assigned to him would necessarily adequately accommodate her disability; and that any federal funding requirements applicable to Cooper's assigned student would be satisfied if she took his place.

No. 16-30667

A dearth of evidence is likewise fatal to Claiborne's suggestion that her classroom duties be limited to the two classrooms located on the school's first floor. Indeed, Claiborne points to no evidence that such a change was even feasible.[8] The same is true relative to Claiborne's request that she be provided a chair with wheels to use in performing her monitoring duties, or otherwise allowed to periodically sit during classroom time, bus duty, lunch duty, and/or hallway duty. Specifically, Claiborne has failed to make the necessary evidentiary showing relative to whether such measures would satisfactorily accommodate her disability, while still allowing her to properly monitor and assist the students, as needed, to perform the essential functions of her job.

Rather, as noted by the district court, Claiborne's assertions regarding reasonable accommodations are based largely on little more than speculation. Such conclusory and speculative assertions fall far short of the mark. For these reasons, we affirm the district court's conclusion that Claiborne failed to satisfy her summary judgment evidentiary burden relative to her reasonable accommodation claim.[9] Accordingly, on the facts presented here, we likewise find no reversible error relative to the lower court's rejection of Claiborne's claim that RSD further violated the ADA and Louisiana law by not engaging in a more involved interactive process.

---

[8] For instance, Claiborne testified that at least some of her classroom time was spent in the two second floor computer rooms. No showing is made, however, as to whether Claiborne's services were needed only in connection with instructional time requiring the use of the computers and/or whether the downstairs classrooms were properly outfitted for use with multiple computers by the students. Further, Coats testified that the school did not have access to any vacant rooms.

[9] Indeed, it is not apparent from the record or the parties' briefs that Claiborne's counsel posited a single deposition question to Principal Coats, or any pertinent RSD personnel, relative to Claiborne's accommodation requests, RSD's responses thereto, and what additional measures, if any, were or could have been taken to attempt to reasonably accommodate Claiborne's disability such that her employment with RSD could continue. This is particularly surprising considering averments by RSD's central office personnel that they were unaware of any accommodation request by Claiborne.

10

## II.    *Discriminatory Discharge Claim*

Claiborne next claims that RSD violated the ADA and Louisiana law by terminating her employment because of her disability. When, as here, a plaintiff offers only circumstantial evidence to prove discrimination under the ADA, we apply the familiar *McDonnell Douglas* burden-shifting framework. *See, e.g., E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009).  Under this framework, an aggrieved employee must first establish a prima facie case for discrimination with the elements being as follows:

> That (a) she is disabled, has a record of having a disability, or is regarded as disabled, (b) she is qualified for her job, (c) she was subjected to an adverse employment action on account of her disability or the perception of her disability, and (d) she was replaced or treated less favorably than non-disabled employees.

*Id.*  If a plaintiff establishes each element of her prima facie case, the burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* The burden-shifting framework then falls away, and any evidence tending to show the articulated reason was pretext for discrimination may be considered.  *Id.*

The district court assumed that Claiborne had established a prima facie case of discriminatory discharge before analyzing RSD's reason for her termination.  Nevertheless, because we have found that Claiborne failed to meet her summary judgment burden regarding the availability of a reasonable accommodation, we likewise conclude, as an initial matter, that the "qualified" element (b) of her prima facie discrimination case is not met.

We additionally find that Claiborne similarly failed to establish element (d) of her prima facie case, i.e., that she was replaced by a non-disabled person. As set forth above, Claiborne contends that Ashley White, a non-disabled

employee, was hired to replace her after her termination. RSD disputes this allegation, maintaining that Claiborne's "position was eliminated and never filled again." Significantly, White's RSD Employee Notification Form lists her position as a "clerk," not a "paraprofessional" as Claiborne's does, and Claiborne has put forth no competent evidence to suggest or demonstrate the contrary actually is true with respect to White. Although Claiborne points to written declarations from her sister/school secretary, Brenda Claiborne, and former school office manager, Tamatha Brown, averring that the alleged replacement occurred, the record is void of evidence that either declarant was competent to establish, for instance, that White even arguably replaced Claiborne, as a practical matter, by performing the same job duties.[10] Nor has Claiborne presented any admissible evidence that White was ever referred to, or treated as, a paraprofessional while working at Prescott during the year it remained open after Claiborne's termination. Hence, on this record, Claiborne has failed to articulate a prima facie case that her termination was the result of ADA discrimination.

Furthermore, even if we assume, as did the district court, that Claiborne had established a prima facie case, RSD has articulated a legitimate, nondiscriminatory reason for Claiborne's termination. Specifically, according to RSD, Claiborne was laid off as a part of a comprehensive reduction in force (RIF), she was never replaced, and, because of budgetary restraints, her

---

[10] With respect to White, both declarations offer only insufficiently conclusory statements devoid of any factual support. Brenda Claiborne states: "After RSD terminated Vera Claiborne's employment, RSD hired two or more individuals as paraprofessionals including Ms. Ashley White, who is RSD's Executive Director, Lakeisha Robichaux's sister." Tamatha Brown states: "Vera was replaced by Ashley White, the sister of RSD's Baton Rouge Branch Manager, Lakeisha Robichaux."

position was eliminated.[11] We have previously recognized that a RIF "is itself a legitimate, nondiscriminatory reason for discharge." *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996).

In this instance, RSD Deputy Chief of Staff Laura Hawkins testified that Prescott faced a "rapidly plummeting enrollment." As a result, fewer staff members were necessary to accommodate the student body. Thus, a RIF was necessary to balance the budget. The RIF, moreover, was not just at Prescott. Rather, in 2013, RSD had "a very tight budget and all the schools were going to have to operate at bare bones level." As such, cuts were made district-wide, impacting employees at all ten of the schools that RSD directly ran, including in New Orleans, and at the RSD central office.

As explained by Hawkins, with a RIF, the basics are considered – what funds exist, the amount of school enrollment, and the budget. Hence, an evaluation is made to determine which staff could be eliminated in order to bring about a balanced budget. Maintaining essential employees, including teachers, is an obvious priority. Thus, school "support staff usually is the first to be laid off because they" unlike teachers "are not considered essential to the school staying open."

Consistent with these principles, the school secretary at Prescott, Claiborne's sister, Brenda Claiborne, was laid off at the end of the semester (but returned to duty for a short time during the summer because help was needed). On the other hand, the Prescott teachers, as essential school personnel, were not subject to the 2013 RIF. "Special education" paraprofessionals at Prescott similarly were not laid off because federal IDEA funding guidelines required their placements with certain individual special

---

[11] Indeed, despite RSD's cost-saving efforts with the RIF, Prescott closed after the 2013-14 school year. At that point, all remaining Prescott employees were laid off.

education students.[12] "Regular" paraprofessionals, to the contrary, could "be cut at any time because [those] positions [were] not necessary or essential" to the school's operations.[13] Thus, according to RSD Deputy Chief of Staff Hawkins, "all regular paraprofessional positions" at Prescott, including Claiborne's, were RIF'd."[14]

Asserting that RSD's proclaimed reason for termination, the RIF, was a pretext for discriminatory discharge, Claiborne repeats her contention that RSD replaced her with Ashley White, a non-disabled person. For the same reasons discussed above relative to Claiborne's prima facie case, this argument likewise fails to establish pretext. Claiborne additionally maintains that the RIF is pretextual based on her contention that she was a special education paraprofessional at Prescott, not a regular paraprofessional, and thus should not have been subject to the RIF. Given the paucity of record evidence supportive of this contention, however, we, like the district court, disagree.

Significantly, Claiborne's RSD Employee Notification Form identifies her as a "paraprofessional," and nothing else. And while it appears undisputed that Claiborne certainly worked with special education students, the Prescott paraprofessionals classified as "special education paraprofessionals" (for purposes of the RIF) were only those who were required by federal funding guidelines to be placed with a single student as a part of his or her

---

[12]     For instance, RSD HR employee Brandy Whitfield: "Ms. Collette Perkins was a special education paraprofessional who worked at Prescott Middle in 2013; she was not laid off during the 2013 RIF because her position was not eliminated."

[13]     Regarding this assessment, RSD Executive Director Lakeisha Robichaux agreed with Hawkins: "The regular paraprofessional positions were not necessary for the school to function. Prescott [] could operate without any regular paraprofessionals working there."

[14]     Robichaux similarly testified: "During the RIF at Prescott Middle in 2013, all regularly paraprofessional positions were eliminated. Ms. Claiborne was laid off because she was a regular paraprofessional."

individualized education plan. Thus, because of these restrictions, special education paraprofessionals, in the context of a RIF, were considered essential employees not subject to termination.

In contrast, regular paraprofessionals, like Claiborne, were not subject to a specialized, individual student assignment. Instead, they could be, as was Claiborne, responsible in varying capacities for multiple students. Such regular paraprofessionals, including Claiborne, undoubtedly were valuable employees, but nonetheless were not considered essential to the school's functioning or required for federal funding; thus, all were terminated as part of the RIF. Notably, Claiborne has put forth no competent evidence to the contrary.[15] Hence, this pretext argument also fails.

Claiborne's final pretext argument relative to her discriminatory discharge claim is that Principal Coats, Tamatha Brown (Prescott's former office manager), and Brenda Claiborne (Prescott's former secretary and Claiborne's sister) allegedly lacked advance notice of the reduction in force prior to Claiborne's termination. Specifically, she argues that such ignorance of the RIF creates a genuine dispute of fact as to whether a RIF, as argued by RSD, actually existed. Considered in the context of the instant matter, we disagree that such facts provide adequate grounds for a reasonable trier-of-fact to conclude that RSD was attempting to hide a differing, true motive behind Claiborne's termination.

As an initial matter, the RIF in question was not focused solely on, or ordered by, *Prescott* personnel. Rather, it was a district-wide reduction,

---

[15] Although declarations provided by Tamatha Brown, the former Prescott office manager, and Roger Cooper, Claiborne's former Prescott co-worker, refer to Claiborne as a "Special Education Paraprofessional," neither establishes that the declarant had the necessary personal knowledge of Claiborne's specific job duties and/or the particular requirements necessary for classification as a "Special Education Paraprofessional." Thus, neither declaration provides competent evidence on that point.

impacting personnel at all ten of the schools RSD directly ran, and at the central office, that was determined to be necessary, planned, and implemented by the RSD Deputy Chief of Staff Hawkins and other executive level RSD staff, not Principal Coats or any other Prescott personnel. Even so, Coats confirmed RSD's assertion that, as of the end of the 2012-2013 school year, enrollment for the upcoming school year (2013-2014) had decreased. Indeed, the declining enrollment was one of the reasons Coats decided to resign from RSD as of June 30, 2013, with the end of the May being the last time he was physically present at Prescott. Moreover, he testified that he had "not much, if any" contact with individuals at Prescott, or the RSD, after he submitted his resignation in May 2013. Accordingly, it is not apparent from this record that Coats likely would have known in advance that Claiborne or any other Prescott personnel would be impacted in June 2013 by a RSD system-wide RIF.

Finally, relative to a purported lack of advance knowledge of the RIF by the Prescott school secretary and office manager, it is not apparent to the Court that such non-leadership personnel necessarily would have had advance notice of a June 2013 RIF. Nor has Claiborne submitted any evidence on this point, or that RSD's budgetary concerns were unfounded or otherwise illegitimate; rather, her position is again one of unhelpful and conclusory speculation. In any event, Claiborne herself testified that Brenda Claiborne, the school secretary, also was laid off in June 2013 as a result of the RIF; therefore, further demonstrating the void of factual support for Claiborne's position on this issue. On these facts, then, the district court correctly concluded that no reasonable basis exists for concluding that the RIF proffered by RSD did not exist and instead was mere pretext for discrimination.

III.    *Retaliatory Discharge Claim:  Reasonable Accommodation and Leave*

With her third claim, Claiborne additionally argues that she was unlawfully terminated in retaliation for seeking accommodation under the ADA for her disability, and for taking leave from work because of that disability. Retaliation claims asserted pursuant to the ADA also operate under the *McDonnell Douglas* framework.  *See Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).  To establish a prima facie case of retaliation, a plaintiff must establish "(1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Id.*  In retaliation claims, the plaintiff must ultimately show that the protected activity is the "but for" cause of the adverse employment action.  *Id.*

The district court again assumed, for purposes of its opinion, that Claiborne could establish a prima facie case of retaliation and focused instead on whether Claiborne could show RSD's proffered reason for termination was pretext.  We agree with the district court's determination that even if Claiborne established a prima facie case of retaliatory discharge, she nevertheless still failed to rebut RSD's legitimate, nondiscriminatory reason for her termination. In arguing RSD's reason is mere pretext, Claiborne again disputes, for essentially the same reasons previously argued, that a RIF, as described by the RSD, actually occurred.  We likewise find Claiborne's position on this issue unsupported and, thus, reject the notion that it is sufficient to preclude summary judgment in RSD's favor.

In support of her claim, Claiborne also relies on her contention that RSD's HR employee, Brandy Whitfield, told her on the telephone that she was terminated because she was "at risk."  Comments in the workplace, however, do not constitute evidence of discrimination unless they are:

(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue.

*Rubinstein v. Admins. of Tulane Educ. Fund.*, 218 F.3d 392, 400–01 (5th Cir. 2000) (quotation marks and brackets omitted). When one of these criteria are not satisfied, the comments are deemed to be "stray remarks" not probative of retaliation.

Here, Claiborne has offered no evidence that Whitfield had any authority to determine who would be discharged as a result of the RIF. Although Whitfield was employed by RSD as a "HR Generalist," she, RSD Chief of Staff Hawkins, and Executive Director Robichaux maintain that the RIF decisions were made district-wide by RSD personnel at administrative levels higher than Whitfield. Significantly, no evidence to the contrary has been cited by Claiborne. Thus, even if Whitfield did refer to Claiborne as "at risk," which is disputed,[16] we are left to conclude that the comment constitutes little more than a stray remark and, as such, is not probative of pretext. Accordingly, we find that the district court did not err in granting RSD's motion for summary judgment as to her ADA retaliation claim.

IV.    *Retaliatory Discharge Claim: Louisiana Workers' Compensation Benefits*

Claiborne's final claim is that RSD terminated her in retaliation for filing a workers' compensation claim, "which is clearly unlawful under Louisiana law." *See* La. Rev. Stat. § 23:1361(B) ("No person shall discharge an employee from employment because of said employee having asserted a claim for [workers' compensation]." To prevail on a retaliation claim, the plaintiff must

---

[16]    Whitfield contends that she told Claiborne that she had been terminated because she was "RIF'd," not because she was "at risk."

establish that filing a workers' compensation claim was "more probably than not" the reason for her termination. *Chivleatto v. Sportsman's Cove, Inc.*, 05-136, pp. 5-6 (La. Ct. App. 6/28/05); 907 So. 2d 815, 819. The employer may then offer a legitimate reason for the discharge, which the plaintiff may rebut with evidence showing the stated reason is a façade for retaliatory termination. *Hansford v. St. Francis Med. Ctr., Inc.*, 43, 964, p.7 (La. Ct. App. 1/14/09); 999 So. 2d 1238, 1242.

Our discussion of RSD's RIF applies here, as well, because it constitutes a legitimate reason for Claiborne's discharge from employment. In explaining her decisions relative to the positions to be cut from Prescott's staff because of budgetary constraints, RSD Deputy Chief of Staff Hawkins avers that she "did not know anything about Ms. Claiborne being on worker's compensation or anything about an accommodations request." On the showing made, we agree with the district court's determination that Claiborne failed to put forth sufficient evidence that it was her claim for workers' compensation benefits that led to her termination, rather than RSD's systematic and objective assessment of the measures necessary to accommodate the budgetary needs of its schools in the face of declining student enrollment. Indeed, Claiborne offers little more than the same unsupported contentions regarding her classification (and resulting termination) as a "regular paraprofessional," relative to the RIF, rather than a "special education paraprofessional. Accordingly, we find the district court likewise correctly granted summary judgment as to this claim.

For the foregoing reasons, we AFFIRM the judgment of the district court.